STATE OF NORTH CAROLINA v. JOHNNY JACOBS

No. 7415SC1026

(Filed 7 May 1975)

1. Indictment and Warrant § 12— amendment of warrant — offense charged not changed

The trial court did not err in allowing the solicitor to amend a warrant charging that defendant attempted to obtain money by making threatening phone calls where the amendment added nothing to the original allegations and did not change the offense charged.

2. Criminal Law § 107; Telephone and Telegraph Companies § 5— threat made by defendant — variance between allegation and proof not fatal

Variance between the State's allegations and proof was not fatal where the warrant charged that defendant threatened his victim by telling him he would take his life but the evidence showed that defendant threatened only to beat his victim, since either threat would fall within the proscription of G.S. 14-196(a)(2) against using in telephonic communication language "threatening to inflict bodily harm."

3. Criminal Law § 126; Jury § 1— juror unable to hear — unanimity of verdict

Where the record showed that the jurors returned to the courtroom before reaching a verdict, the foreman asked if he could accept the vote of a juror who had been unable to hear all of the testimony, and the court sent the jury back to deliberate without answering the question, the trial court did not err in denying defendant's motion for mistrial made on the ground that in effect only eleven jurors decided the case, since the record showed that the verdict as finally rendered was the unanimous verdict of all twelve jurors and that each assented thereto.

ON writ of *certiorari* to review trial before *Hall, Judge.* Judgment entered 14 December 1973 in Superior Court, ORANGE County. Heard in the Court of Appeals 18 February 1975.

On 28 August 1973 defendant was brought to trial before Judge Horton in the District Court on a warrant which charged that on 17 August 1973 he

"did unlawfully, wilfully, and feloniously did make an assault on Donald K. Marlow, and put him Donald K. Marlow in bodily fear and in danger of his life by making a threatening telephone call to Donald K. Marlow demanding two hundred dollars in cash and did unlawfully, wilfully, threaten the said Donald K. Marlowe [sic] by telling him he would take his life if he did not put the two hundred in a bottle back of the Airport Road Mini Mart.

"The offense charged here was committed against the peace and dignity of the State and in violation of law. ~~G.S. 14-87~~ G.S. 14-196(2) [sic]."

The warrant was issued on 17 August 1973. As originally issued it did not contain the words underlined above nor were the words in the warrant stricken through as indicated above. The warrant was amended on 28 August 1973, the day defendant was tried in District Court, by the Assistant District Attorney striking through the portions as above indicated and adding by interlineation the words shown as underlined above. The following notation appears on the margin of the complaint portion of the warrant:

> "Granted by leave of Judge Horton to charge violation of G.S. 14-196(2) [sic].
>
> > W. Lunsford Long
> > Asst. Solicitor
> > 28 Aug. 73."

Defendant, represented by counsel, pled not guilty in the District Court, was found guilty, and from judgment imposing an active sentence, appealed to the Superior Court. In the Superior Court he was represented by the same counsel who had represented him in the District Court. He again pled not guilty and was tried de novo before a jury.

The State's evidence showed that on 15 and 16 August 1973 defendant telephoned Donald K. Marlow, then age 15 and a schoolmate of defendant's, and demanded money. In these phone conversations defendant told Donald to put $200.00 in a bottle behind the Mini Mart Food Store, and defendant threatened to beat Donald if he did not get the money for him. Donald's father learned of these calls and reported them to the police. On 17 August defendant again telephoned to Donald and demanded the money on threat of beating Donald if he didn't get it. A tap had been placed on the Marlow phone, and the phone call made on 17 August was traced. Within a few minutes after the call was made, defendant was arrested at the premises from which the call originated. The arresting officer found defendant sitting in front of the telephone.

Defendant testified and admitted that in telephone conversations he had asked Donald for money, but he denied making any threats. He testified that he had asked Donald to loan him

$200.00 and that Donald told him he would lend him the money and would put it in back of the Mini Mart. Defendant admitted that he had asked Donald to bring the money to him at night at the Mini Mart and that once before Donald had left $20.00 there for him.

The jury found defendant guilty as charged. Judgment was entered on the verdict sentencing defendant to prison as a committed youthful offender. Defendant's trial counsel gave notice of appeal, but the appeal was not perfected in apt time. On 31 October 1974 the Superior Court appointed defendant's present counsel to represent him, and subsequently this Court granted petition for writ of certiorari to permit perfection of the late appeal.

*Attorney General Edmisten by Assistant Attorney General James L. Blackburn for the State.*

*Haywood, Denny & Miller by Emery B. Denny, Jr. and William N. Farrell, Jr. for defendant.*

PARKER, Judge.

[1] Defendant contends that the warrant as originally drawn charged him with an attempt to commit common law robbery and that it could not be lawfully amended so as to charge him with the entirely different offense of violating G.S. 14-196(a)(2). That statute makes it unlawful for any person "[t]o use in telephonic communications any words or language threatening to inflict bodily harm to any person or physical injury to the property of any person, or for the purpose of extorting money or other things of value from any person." It is true, of course, that an attempt to commit common law robbery, which our Supreme Court held in *State v. McNeely*, 244 N.C. 737, 94 S.E. 2d 853 (1956) to be an infamous crime punishable as a felony by virtue of G.S. 14-3(b), is an entirely different crime from the misdemeanor offense created by G.S. 14-196(a)(2). Therefore, if the warrant as originally drawn and the amendment thereto had the effect which defendant now contends they had, a serious question would be presented. As we read the original warrant, however, despite the reference therein to G.S. 14-87, it did not charge an attempt to commit robbery. "Robbery at common law is the felonious taking of money or goods of any value from the person of another or in his presence against his will, by violence or putting him in fear." *State v. McNeely, supra*, at 741. This

definition necessarily carries with it the concept that the offense can only be committed in the presence of the victim. Here, while the warrant as originally drawn referred to an "assault" on Donald Marlow, the factual averments in the warrant made it clear that this occurred only "by making a threatening telephone call to Donald K. Marlow." This explicit factual averment necessarily excludes the idea that defendant was charged with having done anything in Donald's presence and thus one of the essential elements of the crime of robbery was expressly negated by the language of the warrant as originally drawn. Whatever the draftsman of the original warrant had in mind, he failed to charge defendant with robbery or with an attempt to commit robbery. On the other hand, the warrant as originally drawn did contain sufficient factual averments to charge defendant with a violation of G.S. 14-196(a)(2). The amendment did not add anything to those essential allegations and in our opinion did not change the offense charged. The record shows no objection or exception to the amendment entered by defendant's trial counsel, either in the District or in the Superior Court, and his counsel on this appeal does not contend that defendant was in any way taken by surprise by the amendment made. Defendant's assignment of error addressed to the amendment to the warrant is overruled.

[2] Defendant assigns error to the denial of his motions for nonsuit, contending that these should have been allowed because of a variance in the State's allegations and its proof. In this connection he points out that the warrant charged that he threatened Donald "by telling him he would take his life," whereas the State's evidence showed that he threatened only to beat Donald. We do not consider the variance fatal. Either threat would fall within the statute's proscription against using in telephonic communication language "threatening to inflict bodily harm." Defendant, though admitting the phone calls, denied making threats of any character, and he could not have been taken by surprise by any variance between the State's allegation and its proof as to the exact nature of the threats made. This assignment of error is overruled.

[3] Finally, defendant contends that his motion for mistrial should have been granted because of the following events at the trial. The record shows that after the case had been submitted

to the jury, the jury returned to the courtroom and the following colloquy occurred:

"COURT: Who is the foreman?

FOREMAN: I am, sir. Sir, we have a question for the Court.

COURT: Very well.

FOREMAN: Sir, it seems Mr. Chavious, the gentleman next to the last on the end, has had trouble hearing the testimony in this case. And we are in question as to whether or not to bring the verdict of the jury in since, you know, he changed his vote, and then he related to us how he had not heard all the testimony.

COURT: I doubt that I can help you. You have to take your own recollection of whatever you heard, your own recollection of the evidence. I doubt and don't believe I can help you with your question.

FOREMAN: That was our question to the Court. He has changed his vote, but is it proper for me as foreman to accept the changed vote, since he relates that he did not hear.

COURT: Whatever his final verdict is.

FOREMAN: Yes, sir. And you want now his final vote?

COURT: You haven't reached a verdict apparently. Go back and when you return, the verdict must be a unanimous finding, as I told you in the charge. As soon as you have agreed on a verdict, let me know."

The jury again retired, and when it later returned to the courtroom, the record shows the following:

"COURT: Would you take the verdict, Madam Clerk?

CLERK: Have you agreed upon a verdict, members of the jury?

FOREMAN: Yes, we have.

CLERK: How do you find the defendant Johnny Jacobs, guilty as charged or not guilty?

FOREMAN: We find the defendant guilty as charged.

Williams v. Insurance Co.

CLERK: This is your verdict, so say you all?

FOREMAN: Yes.

MR. MOORE: If Your Honor pleases, may we have the jury polled?

COURT: Yes, sir.

(At this time the jury was polled by the Clerk, and each answered that this was their verdict, and that each still assented thereto.)"

Defendant contends that the foregoing portions of the record demonstrate that in effect only eleven jurors decided this case and that he was thereby denied his constitutional right to have his case determined by a jury of twelve. We do not so read the record. On the contrary, whatever may have occurred in the jury room, the record makes clear that verdict as finally rendered was the unanimous verdict of all twelve jurors and that each assented thereto. Defendant's motion for mistrial was properly denied.

In defendant's trial and in the judgment imposed we find

No error.

Judges HEDRICK and CLARK concur.